In this case, we'll go ahead and call our next case, U.S. Department of Labor v. Bristol Excavate. Mr. Caldwell. Good morning, Your Honor. My name is Harold Caldwell. I represent Bristol Excavating and its owner, Calvin Bristol. Bristol Excavating is a small excavating company in north central Pennsylvania. They primarily did things like driveways and excavating for basements and septic systems, that sort of thing, until along came the gas industry. North central Pennsylvania is not a very prosperous area, but the gas industry opened various opportunities. And the office manager for the company managed to negotiate a big contract with Talisman Energy USA. You're familiar with the facts, Mr. Caldwell. So I understand the heart of this dispute to be, is it proper and right to count the talisman bonuses when you're figuring out what is the base pay or the base rate for the employees of Bristol Excavating, correct? Correct. Okay. Now, I don't know how widely it's accepted that National Lampoon's Christmas Vacation is legal precedent, but there's a famous scene in that movie, if you're familiar with it, where the legal mind of Clark W. Griswold comes out with a statement something along these lines. I've been working for this company for 17 years, and every year I've gotten a bonus. And this year, I didn't get a bonus. If you don't want to pay bonuses, that's fine, but when people count on them as part of their salary, well, then other things are settled. But I kind of get that that's the heart of this case, right? Whether employees are counting on this as part of their salary, is that what we should be paying attention to? No, Your Honor. No one promised these employees a bonus. More importantly, you didn't have to agree to go along with the bonus program. You could have said, you know, we're just not going to do this, right? I mean, maybe you face losing employees. I don't know how that works. But you made a decision to say, okay, we will put into place for you, our employees, this bonus program. This extra money? Yeah, we'll help you out, is what they said. That's what the office manager said. Well, there must have been some benefit for the company to do that, right? I mean, you must have perceived some benefit to going ahead and participating in that, that is facilitating it, handling the back office part of it. Otherwise, why do it? Well, yeah, I'm sure promote harmony within the company. Employees would be happier, I suppose, if the office manager had said, oh, well, we're not going to help you do that. It might have not sat well with the employees. That's correct. How do you, from an analytics standpoint, exclude this money from all compensation, all remuneration for employment? In fact, it would be one thing to my mind if the third party had issued checks directly to your employees. But what happened is you invoiced and the money came and you determined who it was who was working on that well, subtracted the 25 percent, and then paid them, paid the employees the money. How do you say, how do you urge that, well, but that's not remuneration for employment? How can we get there? Kind of write the opinion for us. Well, the money didn't come from the employer. It did. You paid them. And you deducted 25 percent. Now, you got it from another source. But similarly, I assume all the money that you end up paying your employees, you get from another source. Yeah. I mean, I can understand, you know, viscerally, you say, well, this isn't right. This isn't the bonus really that's paid by the employer. But then again, it is. The employer had to help. Otherwise, they couldn't get the money. That's all true. That's right. Absolutely true. They could have said, like I said in my brief, well, you're going to have to hire an accountant to get these bonuses. They could have done that. But even so, I don't know that that that would have been a very mean thing to do. Well, is there any distinction to be made between the safety bonus and the pay center bonus and efficiency bonus? In this respect, the safety bonus, it was a set amount for a day without an accident. $25, I think, $50 maybe per day. $20, $25. You knew you were going to get that if you didn't have an accident, right? Right. Well, of course, everybody's interested in safety. Sure. Is there a difference there between that knowing in advance you're going to get this if there's no accident and the pay center or the efficiency bonuses? Were those were those known in advance in the same way that the safety bonus was known? Well, known in advance, certainly not in advance of employment. But once they got there on a well pad. Yeah. These employees talk to each other and they learn that, hey, talismans handing out bonuses. Sure. But my question is more specific than that. You could count on twenty five dollars a day if you didn't have an accident. But the pay center bonus that depended on whether you satisfied talisman or somebody on the job site that you dug deeper than they thought was, you know, you'd exceeded their expectations in some fashion. Right. Right. It occurs to me that that exceeding someone's expectations is a more subjective thing than whether you had an accident or not and therefore might be thought of as being more discretionary. I'm just wondering if that's something that was actually felt to be the case by people on the scene. Correct. To me, the crucial thing is it was never part of the contract between my client and talisman. So my client couldn't have counted on it when he entered into this deal. So it really affected his costs, right? It's a cost that that if he has to include it in calculating overtime, it's a cost that he did not agree to. It seems to me that's an important part of this argument is that there was never an agreement to begin with that my client would absorb that additional cost. If this had been your client instead of talisman's money, would any of these three kinds of bonuses have been bonuses that would have been excluded under the law, that is discretionary bonuses? Well, I mean, your complaint is it wasn't coming from us. If it had been coming from you, would you have been able to benefit from the exceptions? I argued to the district court that this is like being paid when you're not working. There's one exception under two or 70 that talks about being paid for sick days or vacation days, holidays. It's a discretionary bonus. Let me ask you about the things that I understand are part of the test for whether something is a discretionary bonus. The first is that the employer has to maintain some discretion on whether it's going to be paid, right? Right. The second is that the employer has to retain discretion as to the amount. The third is that the employer has to retain discretion as to the timing. That is, it's typically going to be, as I understand it, until near the end of the period it covers. And finally, the bonus can't be paid pursuant to any prior contract. So, with those four things in mind, would any of those three bonuses that we're talking about here, the safety, the efficiency, the pay set, would any of those, if they had been paid by Bristol instead of Talisman, have qualified as discretionary bonuses? I don't know about discretionary, but I think that it would have been similar to being paid for a holiday when you didn't work. Could Talisman have stocked these bonuses any time it wanted? They did, in fact, stop it. Could Talisman have said, you know, we used to pay $100 for a pay setter. Well, we're only paying $50 now. They did do that. Could Talisman have said at any point in time that, yeah, that used to be enough to satisfy us as exceeding expectations, but it's not enough anymore. You've got to do better than that. Yeah, it was totally within their discretion, completely. And Bristol had no input on it whatsoever. Okay. The Wage and Hour Division issued a ruling or an opinion in July of 2005 talking about a vendor-sponsored bonus program and saying it must be included in the regular rate. Should we defer to that, give deference to the Department of Labor's ruling in that regard? Or maybe I'm asking you, why should we not defer? Well, the two opinions that the Wage and Hour Division attached to their brief were themselves very vague. They talk about whether or not these bonuses should be included. It could be included in in meeting minimum wage requirements for the employees. I don't think that those are applicable. And, well, yes, the Wage and Hour Division should be accorded a lot of weight in their their opinions, certainly. But I just think it's clear here, Your Honors, that this is something that has never been addressed at all by Wage and Hour in their opinions or in any court case. And I think that my point of view is correct. All right. Well, thank you, Mr. Goldberg. Thank you. May it please the Court, my name is Rachel Goldberg. I represent the Secretary of Labor. Under the FLSA, the regular rate is a critically important concept because it is the basis for calculating overtime to which employees are statutorily entitled. Nobody's going to disagree with that. But what there is a disagreement about, and this is the thing that's primarily of interest to me, Mr. Goldberg, in 80 years of this statute being on the books, evidently no one has thought to apply it in the manner in which you're applying it or were to apply it here. Because the only case that you folks came up with, which seemed to be on point, is an unreported case from the District of New Hampshire from a year ago. So if there's 80 years of experience with the statute and the strongest authority you've got for the position that an employer should be required to include in base rate compensation, what third-party bonuses are, is an unreported case from the District of New Hampshire, doesn't that indicate that maybe the Department of Labor has gone off the reservation here, not that the employer is clearly in the wrong? The lack of case law, I think, could be read either way. It has not happened, perhaps, or employees haven't brought cases and the department hasn't encountered it in the field. In 80 years, somebody would have brought a case. Somebody would have said something if this was really covered by the Fair Labor Standards Act. Somebody would have said, hey, wait a second, we used to get that bonus from third-party acts. We're not getting it any more than in eight decades? Nobody thought to ask that? Well, as a bit of an aside, that LSA is quite old, but it's constantly presenting novel, factual situations because industries change, the way companies structure their outsourcing and contracting for services have grown exponentially. So lots of things in the employment context change, and so new situations are presented. I mean, this is not the first case where a new situation that the FLSA has not had to directly address has come up before. And it has come up before in terms of incentive programs or incentive payments being part of the regular rate of pay. Surely. My mom was a factory worker in a shirt factory, and her regular rate of pay was determined on how much production she had. What's unusual about that? That is not unusual at all. That is longstanding that employers have paid production, efficiency, safety bonuses. The factual twist here of it coming from a third party, I will grant it, is somewhat new, although we do have wage and hour opinion letters dating back to the 60s on similar factual scenarios. Not exactly now. To me, there's a little bit of an irrationality here because, I mean, if I'm an employer and I decide to pay a bonus because, you know, done something and your value to me and what I'm going to compensate you for is clearly in that regular rate. And knowing that, I give you the bonus because that's our relationship. You're my employee. I'm your employer. And if you get overtime, I know full well that's because I believe you've benefited me and that should be included in your overtime. But when there is something that is of value to a third party with whom you have contracted and they want to compensate your employees because of the value to them over which you have no control other than saying, I'll let them get it or not, and if not, then guess what? They're probably going to go work for Talisman. You know, they're not fools. And then that's included in overtime. How is a company supposed to determine, you know, its costs, its profit? I mean, it could easily go out of business by virtue of Talisman saying, you know, you drill it deeper, I'll give you X dollars and these people work like dogs and drill deeper, deeper, deeper, and all this money comes. And then the overtime, you know, it kind of creates a real problem for a business, doesn't it? In this, I can see how in this scenario it does seem like Talisman somewhat, I don't know, I don't want to attribute malintentions to them, but manipulated the situation such that Bristol was on the hook for the money. Maybe nobody thought somebody was going to be on the hook for the money. That's the question. And overtime in this business presumably could be very hefty and that could be extremely expensive. But I don't think there's, I don't think anyone would contend that this isn't pay for work. I mean, obviously these folks are being paid extra for working part-time. Well, except in the employer-employee relationship. If you say remuneration for employment and I am paying you X, I'm paying you $17 an hour, and that's what you're getting and that's your employee, employer-employee, that's what you're getting. The fact that I'm funneling through money that's coming from a third party, you might say, well, it's not part of the employer-employee relationship. And in terms of my agreement with you from the standpoint of overtime, it's going to be based on what I'm paying you regularly. Well, the alternative, though, I mean, I'm certainly not saying that Bristol did that here, but the FOSA cannot permit an employer to pay a lower base wage and call it the regular rate and allow, you know, in collusion or not, allow a third party to make up the difference on a regular basis. That's not what's happening. But a ruling in Bristol's favor would effectively permit that. Really? Bristol has not done that here at all. I think you can look at the fact pattern and say this is contrary to the policy, et cetera, et cetera. But here, where it's clear that this is over and above, it seems to me it doesn't contravene that policy. Bristol, I mean, here the facts are Bristol paid the money to the employees for work. It hired the employees to perform. Yeah, it paid for their work, and it handled the back office work, the clerical work, the distributed talisman. But if Bristol had paid these bonuses themselves, would these have counted as discretionary bonuses? Not at all. They were announced in advance to induce certain behavior at work, to work safely, to work quickly. These are the classic production bonuses, which are non-discretionary. When you say announced in advance, if talisman retained, and let's say Bristol, again, let's put it in Bristol's hand. Choose the pay center as an example. If they say, we want you working harder, if you exceed our expectations, and that's all they say. They don't say what you have to do. They don't describe what it is. They don't allow you to plan around it. Just say, you know what, you dig deeper than we think a reasonable expectation. If you exceed our reasonable expectations, we'll give you some money. Isn't that sort of the classic example of a discretionary bonus? You do something extra special for us, we'll do something extra special for you. We're not telling you what it is. We're not even telling you how you made it. We're just telling you, do something extra special, we'll treat you extra special. Isn't that exactly what discretionary is? Well, I think it's a continuum, and in that hypothetical, it is more purely subjective, both as to the fact of the payment and as to the amount. There's been no announcement as to how they're going to, you know, if you exceed by X percent, we'll give you X dollars. If it's very subjective in both as to the fact and the amount, then I would agree it is more discretionary, but that's not what I understand the facts to be here and in your classic production bonus. Dewey, when you say it's not what you understand the facts to be here, the safety bonus, as I always read the background stuff, I can see somebody saying, well, 25 bucks a day for no accident, that's pretty clear, but exceed our expectations on speed or depth. That seems pretty darn subjective. I don't believe it was that subjective. I believe that at the safety meetings at the start of each shift, charts were shown as to the expectation as to the rate at which they would be drilling per day, the completion rate, you know, for a well, the schedule. I think those were known quantities, and there were clear metrics. There's nothing in the record about that. I cannot point you to it right now. I know that Bristol has never argued to the contrary. What if Talisman paid the employees directly? Well, that, as we have addressed, as Wage and Hour has addressed in opinion letters, even if it is paid directly by Talisman to the Bristol's employees for work that Bristol has, you know, directed them to do at the behest of and under the control of Bristol, it is still part of the regular rate. You know, it goes back to the admittedly not applicable hypothetical here, but where an employer cannot siphon off money. Now, you say siphon off, but there could be a principle that if the employer has had some involvement with the setting of the bonus or it has, you know, determination of the amount or there is manipulation or siphoning, et cetera, but where there is no showing that that is happening and it's totally under the control of the third party? Well, practically speaking, I think a third party is going to be reluctant to do that because it puts them at risk of being deemed a joint employer by paying this. So Talisman, you know, funneled it through Bristol for just that reason. But at least Bristol won't be on the hook. Because the only reason it wasn't paid by Talisman, to my mind, is Talisman didn't know. And Bristol had to figure out, well, John Smith was working on well number three, which was drilled deeply, and so was Susie, whatever, had to figure it out. But for that, you know, the other ten employees who worked on that well were clearly Talisman employees and the other two Bristol ones had to figure out who they were. Mm-hmm. Is it the case that Talisman, in fact, and you heard me ask this to Mr. Caldwell, and it was so, but you've got a different view of the facts, I'd like to know it, that Talisman was free at any time to say, we're not paying that? They are free at any time, just as Bristol would be if Bristol had decided to. I mean, just because you theoretically have the freedom, you can change the rate of pay at any time, and there's nothing. But they could say, we're not doing those bonuses, we're paying them at half of what we did before, our expectations have changed, you're going to have to do a whole lot more if you want to get any bonus. They can change that, but that alone doesn't make it discretionary in the statutory sense. Because if they have announced it in advance. If they've announced it in advance. And given such that the employees have an expectation that they're going to receive it, and it's tied to a metric that's measurable and is inducing the employees to work in a certain way, then if it is, in fact, paid, then it's included in the regular rate. Of course an employer retains the discretion to change the terms of its employer. So it's just the fact that it's, what, if I paid it once, is there an expectation? No, again, I think it's along a continuum. It depends on how it's the character of the payment and how the employer has characterized it to the employees. If it is to induce certain work efficiency, work safety. Any work efficiency incentive, then, in the minds of the Department of Labor, is a bonus that has to be included in the base rate? In most cases, yes. I mean, it makes sense. They're paying their employees. They're telling their employees, we want you to work harder. If you work harder and produce 20 more widgets, we'll give you 20 more percent. If they're leaving it. If they haven't specified as to the amount, then it is on a continuum. If they have left it completely subjective as to the amount and the fact of payment, then it is more discretionary. But that is not the same as a production bonus, in the sense that if employees don't know, how much more do I have to work? You know, every employee knows, well, if I work hard, my employer is going to be happy. But if I produce X more widgets, I'll earn X more dollars. That becomes non-discretionary. What are we supposed to make out of the language in the Walling, back in 1945, which talks about the expectations of the parties. You've just leaned on that, the expectations. But it says, the regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work week. That makes it sound like it's got to be something that people have agreed on. And here, Bristol never agreed on these bonuses. Bristol didn't say, I'm agreeing with you, employees, that this is the money you're going to get. They said, and all they said was, we won't stand in the way of you getting this. Well, two things. One, factually, they, in fact, did agree. They talked to Talisman to learn the terms. They explained the terms to their employees, and they told their employees they were going to do it. When you say, they told their employees they were going to do it, my understanding from reading this record is, they said, Talisman's offering these bonuses, and we're not going to stand in the way of you getting them. We'll help you get them if you want to have them. But to me, that is agreement. I mean, they say it as ceding. You view that as a contractual obligation. At that point, Bristol had no choice. It would have been a breach of contract with their employees if they'd said at any point, we're not facilitating this anymore. I don't know about a contract. I mean, it wasn't a written, maybe an oral contract. That gets into what agreements are, right? If it wasn't something they agreed upon, they were free to walk away from it. They hadn't then all the way along. Excuse me. And they could have. I mean, nothing bound them to once in Romano, for example, which the employer, in fact, didn't. Arguably, I think there were disputed facts. It did not pay the bonuses from the third party, and the employees brought suit against Romano in part based on a contract claim. It was disputed. What deference do we owe to these wage and hour divisions? Well, they're interpreting an interpretive regulation, which is not a legislative regulation, so Skidmore deference would be appropriate. They are longstanding, so I do think they warrant Skidmore deference, but it would be not Chevron. It would be Skidmore level deference here. And the fact that other than Romano, are there any administrative actions that you can, I take it not or we would have seen them, right? Correct. To my understanding, yes. All right. Thank you. Thank you very much, Ms. Goldberg. Thank you. No rebuttal? No. Okay. Good enough. Thanks. Call our next case.